IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION |
| | : | NO. 16-122-1 |
| STEVEN KITCHELL | : | CIVIL ACTION |
| | : | 17-986 |

**MEMORANDUM**

**SCHMEHL, J.**   *s/JLS*                                                                                    **JULY 9, 2020**

      Defendant has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, asking that the Court vacate his conviction and sentence on Count Two of an Information based on two claims of ineffective assistance of counsel. Instead of substantively responding to the § 2255 motion, the Government has filed a Motion to Dismiss the § 2255 Motion on the ground that Defendant waived his right to collaterally challenge his conviction and sentence. For the following reasons, both motions are denied.

**BACKGROUND**

      Defendant was charged in an Information with one count of possession with intent to distribute heroin and marijuana, Schedule I controlled substances; methamphetamine, amphetamine, and cocaine, Schedule II controlled substances; and alprazolam and clonazepam, Schedule IV controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), (b)(1)(D), and (b)(1)(E) (Count One), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1) (Count Two). Defendant appeared at a guilty plea hearing. After questioning Defendant regarding his willingness to enter into and understanding of the Guilty Plea Agreement, and finding

that he was competent to plead, that his guilty plea was voluntary, and that there was a factual basis for the guilty plea, the Court accepted his guilty plea as to both counts. (5/3/16 N.T. at 29.) Defendant was sentenced to a term of 77 months imprisonment on Count One to be followed by three years of supervised release and a mandatory minimum consecutive sentence of 60 months on Count Two, to be followed by five years of supervised release for a total term of imprisonment of 137 months. The sentence of 137 months was at the lowest end of Defendant's range of 137-156 months under the advisory federal sentencing guidelines.

**GOVERNMENT'S MOTION TO DISMISS**

The Court will first address the government's motion to dismiss the § 2255 motion based on its contention that the Defendant waived his right to collaterally attack his conviction and sentence. Our Court of Appeals has held that a collateral review waiver is enforceable if: (1) the claims the defendant raises on collateral review fall within the scope of the waiver and (2) the defendant knowingly and voluntarily agreed to the waiver, unless (3) enforcing the waiver would result in a miscarriage of justice. *United States v. Grimes,* 739 F.3d 125, 128–29 (3d Cir.2014); *United States v. Mabry,* 536 F.3d 231, 237 (3d Cir.2008).

Defendant's Guilty Plea Agreement contained the following provision:

> 13. In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.
>
> a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.
>
> b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant

2

> may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding:
>
> (1) that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 3 above [a reference to paragraph 3 of the plea agreement];
> (2) challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines;
> (3) challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court; and
> (4) that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.
>
> If the defendant does appeal or seek collateral relief pursuant to this subparagraph, no issue may be presented by the defendant in such a proceeding other than those described in this subparagraph.

[ECF 28-1 at pp. 6-7.]

In addition, the Court specifically discussed this provision with Defendant during his guilty plea hearing and confirmed that Defendant understood the appeal/collateral waiver. [ECF 28-2 at p. 17.]

Pursuant to paragraph 13(b)(4) of his Guilty Plea Agreement, the Defendant retained the right to collaterally claim that his trial counsel provided constitutionally ineffective of counsel. As a result, Defendant's two claims of constitutionally ineffective assistance of counsel are not barred by the collateral review waiver. Therefore, the government's motion to dismiss the § 2255 motion is denied. The Court now will address the merits of Petitioner's § 2255 motion.

**LEGAL STANDARD**

Title 28, United States Code, Section 2255 provides as follows: A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the

3

Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. 28 U.S.C. § 2255(a). "In order to prevail on a Section 2255 motion, the movant's claimed errors of law must be constitutional, jurisdictional, 'a fundamental defect which inherently results in a complete miscarriage of justice,' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *United States v. Perkins*, Crim. A. No. 03-303, Civ. A. No. 07-3371, 2008 WL 399336, at *1 (E.D. Pa. Feb. 14, 2008) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

**DISCUSSION**

Defendant asserts two claims of ineffective assistance of counsel in his § 2255 Motion and has filed a "Memorandum of Law in Support of Petitioner's § 2255 Motion" (the "Memorandum") that explains his grounds for relief. Defendant's first ground for relief is that his counsel erred during the plea hearing by "failing to argue that the government failed to provide the necessary factual basis for the [Defendant's] guilty plea to this weapons-possession charge. Had counsel done so, the government would have had to identified evidence that would meet that more stringent `in furtherance' standard." [ECF 21 at p. 5.] Defendant's second ground for relief is that his counsel was ineffective for "failing to challenge the 924(c) offense on the grounds that there was insufficient evidence to support such an offense. Had counsel challenge [sic] the 924(c) charge, a possibility exists that the 924(c) count-Count 2 would have been dismissed for insufficient evidence." *Id.*

The Court finds that both of Defendant's ineffective of counsel claims essentially claim that his trial counsel was ineffective for advising him to plead guilty to

Count Two despite a lack of evidence and, therefore, the Court will consider these claims together.1  As will become evident from the discussion, *infra*, there is no need for an evidentiary hearing.

To prevail on a collateral attack based on ineffective assistance of counsel, a Defendant must demonstrate: (1) that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and (2) that the deficient representation was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 688–689 (1984). In determining whether counsel has satisfied the objective standard of reasonableness set forth in the first prong, courts must be highly deferential toward counsel's conduct. *Id.* at 689. To satisfy the prejudice prong, the defendant must show that, but for counsel's errors, the outcome of the proceeding would have been different. *Id.* at 694.   Where, as here, a defendant pleads guilty, the second prong is modified so that "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

At the Defendant's guilty plea hearing, the government enunciated the following relevant evidence against Defendant it would have introduced had the case gone to trial:

> . . .And then the police also executed a search warrant on 419 Taylor Street, that had also been tied as a location of drug sales to the defendant during the investigation that I summarized earlier. They found person number one who operated the number one's rooming house and let them in. With person number one's help the vice unit members found a lock combination safe in a second-floor bedroom. Inside the safe was a black lock box with a SIG Sauer .40 caliber semiautomatic pistol with serial number 248108511 loaded

---

1 At the guilty plea hearing, Defendant admitted that his counsel had answered all of his questions and had done everything Defendant had asked him to do (5/3/16 N.T. at 8), and that he was satisfied with his legal representation (*Id*. at 11-12.) It was not until Defendant met with "jailhouse acquaintances," that he decided that his trial counsel had been constitutionally ineffective. [ECF 21, at p. 9.]

with 12 live rounds of ammunition. And then various drugs were also found, and there was a -- the defendant's latent fingerprint was found on some of the drug packaging material. And then the drugs that I described in the plea agreement, along with packaging material for the drugs and other indicia of possession with intent to distribute was found, and the SIG Sauer pistol was found to -- and tested operable and capable of discharging the type of ammunition for which it was manufactured. The drug addict admitted that he had traveled with Mr. Kitchell to New Jersey to sample the heroin that Kitchell bought there, and that he cooperated and defendant consented to do a download of the cooperating defendants multiple Smartphones and tablets. During a search of these a digital image was recovered of five African American males standing in the kitchen of 419 Taylor Street wearing hoods and faces covered holding firearms. Mr. Kitchell was reliably identified as one of those men, and the firearm appeared to be in was reliably identified as the .40 caliber SIG Sauer automatic pistol seized and charged in this investigation.

Q: All right. Mr. Kitchell, do you fully admit to all the facts as just stated by Mr. Nair?

Mr. Lauer: Judge, may I intercede, please?

Q: All right. Mr. Lauer: Mr. Kitchell acknowledges virtually all of it. He has asked me to point out, and I will do this frankly in some greater detail at sentencing, but with respect to the firearm that is repeatedly referred to in this document as quote/unquote his, it wasn't his, but it was in a location that he had access to, he went in regularly as you see from the plea memorandum – the change of plea memorandum a lot of the material in that safe was his material, and he acknowledges that given all of the circumstances of this case he was certainly in possession of the firearm.

Q: And his key opened that safe? Mr. Lauer: Actually it was a combination safe, and he had the combination, he had access to it, and in fact it contained other materials. (Defendant confers with counsel).

Mr. Lauer: Okay, I'm sorry. He did not have a combination – he didn't know the combination, but he had access to the safe. And he had the key to the lock box in which –

Q: I know he had the key to the lock box, but how'd he get in the safe if he doesn't have the combination?

Mr. Lauer: Well the cooperating defendant and he were together in that building and he obtained access in that

6

fashion. In other words he had to repeatedly get into the safe because the black box, he needed access to that. So I mean he was in and out of that safe and he was aware of the fact the gun was there, and you know, had access to it, possessed it, but he has been troubled from the beginning by the assertion that it – that he put it there initially and that it was his.

Q: Was he holding the gun in that photograph?

Mr. Lauer: I'm sorry? Well that's the other issue. He was not one of the people in that photograph. The people were hooded. Judge, he's not denying access and possession, but he is denying that he was in [actual] possession of that gun.

Q: Yeah, but the facts have to substantiate access and possession.

Mr. Lauer: I'm sorry?

Q: The facts have to substantiate access and possession.

Mr. Lauer: Well and I think they do.

Q: You can't say –

Mr. Lauer: And he does.

Q: -- I didn't have the combination, I wasn't holding the gun, and -- but I possessed it, you know? All right. Mr. –

Mr. Lauer: He had access to everything in that safe. He had regular entry into that safe to get the black box that we've talked about. So it's -- he's not denying access or possession, but it has been asserted, and this is something he and I have talked about from the beginning, that it wasn't his gun to begin with. He doesn't deny he had possession of it.

Q: All right. Well you don't have to own a gun to possess a gun.

Mr. Lauer: I understand that.

Q: So I mean that's a clear –

Mr. Lauer: And that's why the plea is being entered.

AUSA Nair: Your Honor, I'm satisfied as long as he agrees with his attorney's version that that satisfies the elements of the –

7

>Q: All right. Is everything Mr. Lauer said correct?
>
>A: Yes, Your Honor.
>
>Q: All right. And you're now ready to change your plea to these two counts from not guilty to guilty, correct?
>
>A: Yes, Your Honor.

[ECF 28-2 at pp. 25-30. It is clear from this colloquy that while Defendant wanted to place on the record that he was not the actual owner of the pistol, he did not deny that he possessed the pistol.

18 U.S.C. § 924(c) provides that any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years. Id. § 924(c)(1)(A)(i).

Defendant was convicted of possession of a firearm "in furtherance of" a drug trafficking crime. Our Court of Appeals addressed § 924(c)'s possession prong in *United States v. Sparrow*, 371 F.3d 851 (3d Cir. 2004), noting that, "[u]nder § 924(c), the 'mere presence' of a gun is not enough." *Id*. at 853. Instead, "the evidence must demonstrate that possession of the firearm advanced or helped forward a drug trafficking crime." *Id*. The Court adopted the following eight factors enumerated by the Court of Appeals for the Fifth Circuit in *United States v. Ceballos-Torres,* 218 F.3d 409 (5th Cir. 2000), that are relevant in determining whether a firearm advanced or helped forward a drug trafficking crime: the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to

8

drugs or drug profits, and the time and circumstances under which the gun is found. *Sparrow*, 371 F.3d at 853 (citing *Ceballos-Torres*, 218 F.3d at 414–15). The Third Circuit has emphasized that these eight factors are "nonexclusive," and are not "legal requirement[s] for a § 924(c) conviction." *Sparrow*, 371 F.3d at 853. Thus, no one factor is required, and a finding of guilt may be made despite the absence of one or more factors. *See, e.g.*, United States v. Bobb, 471 F.3d 491, 496–97 (3d Cir. 2006) (finding that, when "many" of the *Sparrow* factors were fulfilled, there existed a "nexus between the possession of the gun and the drug trafficking" and "a rational trier of fact could reasonably find that Mr. Bobb's possession of the firearm furthered, advanced or facilitated his drug trafficking activities").

In *Sparrow*, the Third Circuit reviewed a § 2255 motion to vacate a conviction for possession of a firearm in furtherance of drug trafficking. The petitioner, Sparrow, claimed his counsel was ineffective in permitting him to plead guilty to a § 924(c) violation. *Sparrow*, 371 F.3d at 851. Sparrow argued that an "insufficient factual nexus exist[ed]" between his drug trafficking crimes and possession of a loaded pistol when, following complaints from citizens regarding Sparrow's marijuana sales operation at a convenience store determined to be under the control of Sparrow, police executed a search warrant at the store and discovered nine large Ziploc bags containing marijuana, $140 in cash, and a loaded firearm. *Id.* at 851–52. These items were found in a compartment beneath floor tiles. *Id.* at 851. In order to gain access to the compartment, police used a crowbar to pry the tiles loose. *Id.* at 852. The court utilized a sufficiency-of-the-evidence standard of review in evaluating whether Sparrow's possession of a firearm was in furtherance of his drug trafficking activities, exercising plenary review in interpreting the legal requirements of § 924(c). *Id.*

Applying the eight factors outlined in *Ceballos-Torres*, the Third Circuit in

9

*Sparrow* concluded that there was sufficient evidence to support the conviction. *Id.* at 854. Namely, the court found that the firearm was not legally possessed, was found with drugs and money, and was loaded. *Id.* Sparrow argued that, because police could only access the firearm with the use of a crowbar, it was not easily accessible and therefore was not possessed in furtherance of drug trafficking. *Id.* at 853. The court noted that, "[w]hile the location of a firearm is admittedly relevant, immediate accessibility at the time of search or arrest is not a legal requirement for a § 924(c) conviction." *Id.* Moreover, the court found that the accessibility factor may be fulfilled by a strategically located firearm, and that, in Sparrow's case, "[t]he gun was placed so that it would be immediately available for Sparrow's protection whenever he retrieved drugs or money from the floor compartment." *Id.* at 854. Thus, the court concluded, this factor was satisfied as well. *Id.*

Similarly, in *United States v. Iglesias*, 535 F.3d 150 (3d Cir. 2008), the Third Circuit affirmed the defendant's conviction, following a jury trial, for a violation of § 924(c). During the execution of a warrant to search an apartment under the control of the defendant, police discovered, *inter alia*, a briefcase which contained an unloaded semiautomatic handgun, a loaded magazine, and drug packaging materials, and which was itself located within close proximity to drugs. *Id.* at 154. The apartment also contained over $15,000 in cash, approximately 156 grams of methamphetamine, and drug packaging materials. *Id.*

Applying the *Sparrow* factors, the court determined that there was sufficient evidence to support the defendant's conviction. *Id.* at 157. Specifically, the court found that, "[g]iven the proximity of the loaded magazine to the gun—and considering that the gun, magazine, and drug packaging paraphernalia all were stored together in the briefcase that was found in the same room as methamphetamine—a rational juror

10

easily could have concluded that the gun was used 'in furtherance of' [the defendant's] drug-trafficking activities within the meaning of 18 U.S.C. § 924(c)." *Id.* (citing *United States v. Loney*, 219 F.3d 281, 289 (3d Cir. 2000)).

In *Sparrow*, the Third Circuit further noted that "a number of courts have upheld § 924(c) convictions when the firearm in question was not easily or immediately accessible. See *United States v. Garner*, 338 F.3d 78, 80-81 (1st Cir.2003) (affirming conviction when firearms and drugs were found in a hole in a wall of a building's common basement and the defendant was selling drugs out of an apartment in the building), cert. denied, 540 U.S. 1084, 124 S.Ct. 948, 157 L.Ed.2d 761 (2003); *United States v. Luciano*, 329 F.3d 1, 3-6 (1st Cir.2003) (affirming conviction when a firearm and drugs were found in a ceiling crawlspace, requiring the agent to stand on a chair and climb into the crawlspace); *Morgan*, 33 Fed.Appx. at 605-606 (affirming conviction when firearms and drugs were found together in a drop ceiling while the defendant was away from his apartment); *Bressi v. United States,* No. Civ. A. 01-407, 2001 WL 395289 (E.D.Pa. Apr.5, 2001) (denying a habeas petition when a firearm and drugs were found in a locked safe)." *Sparrow*, 371 F.3d at 853-854.

In this case, many of the *Sparrow* factors are also satisfied. First, Defendant pleaded guilty to the drug trafficking offenses charged in Count One, and is not contesting his conviction as to that Count. Second, Defendant's firearm, though not found on his person, was strategically located in the safe so it could be easily accessible when Defendant retrieved his drug supply. While Defendant may not have had immediate access to the safe because he did not know the combination, he did have access to the safe when the cooperating defendant was present and Defendant possessed the key to the black lock box which contained the Defendant's illegal drugs.

Moreover, under section 924(c), a defendant can still possess a firearm that he does not actually own and more than one person can constructively possess a firearm. Third, the firearm in the safe was a .40 caliber semi-automatic pistol and was not possessed as a collector's item or for the purposes of hunting. Fourth, the firearm was loaded with 12 live rounds of ammunition. Fifth, the firearm was found in close proximity to the black lock box in the safe (Defendant had a key for the lock box and his latent fingerprint was found on one of the bags containing drugs); Sixth, the firearm was found during the search of a residence from which Defendant conducted some of his drug sales.

In this context, sufficient evidence exists to support Defendant's § 924(c) conviction. As such, his attorney's advice to plead guilty on Count Two was objectively reasonable and therefore does not constitute ineffective assistance of counsel.